UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:24-CV-00003-EBA

TOMMY LEE MAYNARD,                                                                        PLAINTIFF,


V.                            **MEMORANDUM OPINION & ORDER**


MARTIN O'MALLEY,
*Acting Commissioner of Social Security*,                                       DEFENDANT.


\*\*\* \*\*\* \*\*\* \*\*\*

### INTRODUCTION

Plaintiff, Tommy Lee Maynard, appeals the Social Security Commissioner's denial of his application for Disability and Disability Insurance Benefits ("DIB"). [R. 21]. Maynard alleges that the Administrative Law Judge ("ALJ") improperly denied his disability benefits for two reasons: (1) the ALJ improperly disregarded Dr. David P. Herr, D.O.'s medical opinion due to his role as a co-conspirator in the Eric Conn fraud scheme; and (2) the ALJ incorrectly discounted Drs. Leigh Ann Ford's and Susan Rhoads' medical opinions. [*Id.*]. Maynard and the Commissioner filed briefs in support of their respective positions. [R. 21; R. 26]. Further, the time for Maynard to file a Reply has passed and no such brief has been filed. [*See* R. 5]. So, this matter is ripe for review. The Court will affirm the Commissioner's final decision for the reasons below.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Maynard is a resident of Pike County, Kentucky who, at the time of his initial application for disability benefits, alleged he was suffering from pain in his right shoulder, hips, legs, lower back, knees, sleeping problems, memory and concentration issues, mood swings,

restless leg syndrome, stomach and heart problems, anxiety and nervousness, numbness in his right hand, depression, high blood pressure, and headaches. [R. 14 at pg. 83]. As a result of these impairments, Maynard applied for disability benefits in February of 2010, wherein he alleged that his disability began on January 4, 2010. [*Id.* at pgs. 247–48]. Before this onset date, Maynard had been working in the coal industry since 1995. [*Id.* at pgs. 249–53]. The SSA then denied his claim at both the initial and reconsideration levels of review. [*Id.* at pgs. 80–96].

At the time of this application, Plaintiff was represented by Kentucky attorney Eric Conn. [R. 3-1 at pg. 2]. As the Social Security Administration ("SSA") indicates, Conn employed a fraudulent scheme to secure benefits for his clients that included as co-conspirators Administrative Law Judge David Daugherty and Dr. David Herr. [R. 26 at pg. 2]. As the Sixth Circuit explained:

> Conn, Daugherty, and [Drs. Frederic Huffnagle, Bradley Adkins, Srinivas Ammisetty, and David P. Herr] were engaged in a widespread scheme to secure SSI and SSDI benefits for Conn's clients based on fraudulent disability applications. SSA Br. at 12–15. The scheme, according to the SSA, worked like this: Conn created a limited number of template Residual Functional Capacity ("RFC") forms, which he or attorneys in his office filled out ahead of time. *Id.* at 13. These forms, which are normally meant to convey a claimant's "ability to do work-related activities on a day-to-day basis in a regular work setting," 16-cv-154 (Hicks), R. 42-2 (Adkins Report, RFC Form) (Page ID #1438), were purportedly manipulated to ensure that they satisfied the SSA's criteria for establishing a disability. *Id.* The doctors above then signed these forms without making any adjustments, and Conn submitted the forms to the SSA on behalf of his clients. *Id.* Daugherty, who was allegedly receiving bribes from Conn, then assigned Conn's cases to himself and issued favorable rulings to Conn's clients. *Id.* at 14–15; Pls. Br. at 4.

*Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018). A similar pattern thereafter occurred here. Maynard requested a hearing before an ALJ to appeal the denial of his benefits, but on September 2, 2010, Administrative Law Judge (ALJ) David Daugherty issued a fully favorable decision on Maynard's behalf, without conducting a hearing, finding him disabled based on evidence from Dr. David Herr. [R. 14 at pgs. 98–106].

Conn's scheme, however, was eventually discovered by the SSA via two referrals the

Commissioner received in May 2015 and November 2017. [R. 12 at pg. 4]. Ultimately, the SSA

Office of Inspector General (OIG) referred approximately 3,700 cases to the SSA based on the

OIG's belief that fraud was involved in the application for benefits for each of these cases. [*Id.*].

Maynard's application was one of the cases the OIG identified in this group. [R. 14 at pgs. 800–

03]. The Appeals Council then sent notice to Plaintiff in May of 2015 that it had reason to suspect

fraud may have been involved in the granting of his benefits in 2010 and under § 205(u) of the

Social Security Act, the SSA would need to redetermine his entitlement to his benefits. [*Id.* at pg.

184].

On November 17, 2015, a redetermination hearing was held before ALJ Sandra R.

DiMaggio Wallis. [*Id.* at pg. 57]. ALJ Wallis then issued a decision finding that Plaintiff was not

disabled from January 4, 2010, to September 2, 2010, and ordered that his benefits be terminated.

[*Id.* at pg. 134]. However, the Appeals Council then remanded the case for another hearing and

decision. [*Id.* at pg. 143]. Another hearing was then held on February 9, 2017, before ALJ Wallis

again and an unfavorable opinion was rendered on April 11, 2017, denying Plaintiff disability

benefits. [*Id.* at pgs. 21–30]. The Appeals Council then denied Maynard's request for a review of

the ALJ's April 2017 decision. [*Id.* at pg. 7].

Plaintiff filed suit against the Commissioner challenging the SSA's 2016 redetermination

process. *See Maynard v. Comm'r of Soc. Sec.*, 7:17-cv-00183-DCR (E.D. Ky.) The Sixth Circuit

then ruled in a related case that refusing to allow the claimants involved in the Conn scheme, such

as Maynard, to rebut the OIG's assertion of fraud as to their individual applications violated their

Due Process rights under the Fifth Amendment. *Hicks*, 909 F.3d at 804. After this ruling, this Court

remanded Plaintiff's case to the Commissioner for further proceedings consistent with the Sixth

Circuit's ruling in *Hicks* and that Maynard's benefits be reinstated pending further administrative

proceedings. [*Id.* at pgs. 692–93]. Due to the COVID-19 Pandemic, an in-person hearing on the matter was not conducted until May 5, 2023, which was then held before ALJ Nicholas Walter. [*Id.* at pg. 639]. During the hearing Walter gave Maynard's counsel an opportunity to rebut the exclusion of Dr. Herr's findings and counsel argued that this evidence should not be excluded because this was not "a case where fraud was definitely involved." [*Id.* at pg. 643].

ALJ Walter then issued his opinion on May 19, 2023, finding that "[a]fter considering the evidence absent fraud or similar fault, the undersigned concludes there is insufficient evidence supporting a finding of disability during the period at issue." [*Id.* at pg. 628]. As part of his decision, Walter stated he ultimately did not consider Herr's findings and detailed his reasoning for this exclusion with the following:

> In this case, Mr. Conn represented the beneficiary during the initial application for benefits. Additionally, the record contains an examination by Dr. Herr, with the opinion satisfying SSA's criteria for establishing disability (Exhibit 15F). Furthermore, the beneficiary's original decision awarding benefits was issued by Administrative Law Judge Daugherty on the record, relying entirely on Dr. Herr's report (Exhibit 5A). Given the similarities between Mr. Conn's admitted fraud scheme and the facts of this case, there is reason to believe that fraud or similar fault was involved in the submission of evidence from Dr. Herr. Therefore, this evidence has not been considered.
>
> During the May 2023 hearing, the beneficiary's representative questioned whether the evidence from Dr. Herr should be excluded, given that the beneficiary's case and the evidence at Exhibit 15F was not specifically named in the OIG affidavit (Exhibit 17D). While the affidavit does not identify the beneficiary or the specific piece of evidence at issue, the undersigned is able to make inferences based on facts and characteristics common to patterns of known or suspected fraudulent activity. The undersigned makes the same inference here, in light of all the other admissions by the fraudulent actors. Therefore, the undersigned has disregarded the examination and opinion by Dr. Herr. Even if this examination was not excluded, the undersigned would find it of little probative value given the established fraudulent conduct of Dr. Herr when working with Mr. Conn.

[*Id.* at pgs. 618–19]. Maynard then filed exceptions to the ALJ's decision, but in a letter issued on November 14, 2023, the Appeals Council stated that they had "determined that the ALJ did not

abuse his discretion, and there are no other reasons under our rules to assume jurisdiction in your case." [R. 14-1 at pg. 3].

Plaintiff Maynard then filed his Complaint in this matter on January 9, 2024. [R. 1]. Concurrently with his Complaint, Maynard filed a motion to enjoin the Commissioner from ceasing his benefits while his appeal is pending or, alternatively, for the Court to order an evidentiary hearing on the matter. [R. 3]. During the briefing on this motion, the parties consented to the referral of this matter to a magistrate judge. [R. 8]. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. Additionally, the SSA moved to dismiss Plaintiff's § 1983 claim on the grounds that this claim was not a viable legal theory. [R. 11]. The undersigned ultimately denied Plaintiff's motion for to enjoin the Commissioner and granted the SSA's partial motion to dismiss. [R. 15; R. 16].

Now, Maynard requests judicial review of ALJ Walter's decision. [R. 1]. He presents two issues in this appeal. *First*, Maynard argues that the ALJ improperly disregarded Dr. Herr's findings. [R. 21 at pg. 11]. *Second*, Plaintiff asserts that the ALJ incorrectly discounted Drs. Ford's and Rhoads' medical opinions. [*Id.* at pgs. 12–13].

STANDARD OF REVIEW

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*,

966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It is important to note that where, as here, the Appeals Council declines to review an Administrative Law Judge's decision, that decision becomes the final decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference.[1] In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See id.* at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, an ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing

---

[1] "Precisely because agency action often takes the form of determination of general statutory principles, agencies are often in the position of architects carrying out a commission whose broad goals have been set by Congress. Judges should thus afford agencies leeway to carry out the task of the architect." ADRIAN VERMEULE, COMMON GOOD CONSTITUTIONALISM 152 (2022).

administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, if the ALJ reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can

align with the claimant's residual functional capacity, age, education, and past work experience. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

ANALYSIS

A

Maynard first argues that ALJ Walter improperly disregarded Dr. Herr's medical findings because of his involvement in Conn's fraudulent scheme. [R. 21 at pg. 11]. Maynard asserts that this decision was not made on the basis of objective facts but was instead done upon an inference that Dr. Herr's report was fraudulent, that claimant was not given a proper opportunity to rebut the exclusion of this report, and that ALJ Walter was not a neutral decisionmaker due to his statement that he would have found Herr's report to be of little probative value even if it had not been excluded. [*Id.* at pg. 12]. The SSA, however, maintains that the ALJ properly disregarded Herr's report because he "had a reason to believe that the report was tainted by fraud or similar fault," that Maynard had an opportunity to rebut the exclusion of this evidence, and that Maynard has failed to demonstrate that ALJ Walter was not a neutral decisionmaker when he rendered his decision. [R. 26 at pgs. 6–10].

Pursuant to 42 U.S.C. § 405(u)(1)(B), "[w]hen redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." The SSA has explained in the past that the "reason to believe standard" under 42 U.S.C. § 405(u)(1)(B) "means reasonable grounds to suspect that fraud or similar fault was involved in the application or the provision of evidence. The reason to believe standard requires more than mere suspicion, speculation, or a hunch, but it does not require a preponderance of evidence." SSR 22-2p(B)(5), 2022 WL 2533117, at *4 (May 17, 2022).

To make this determination, "[a]djudicators may make reasonable inferences based on all the information in the record such as facts or case characteristics common to patterns of known or suspected fraudulent activity. For us to disregard evidence, it is not necessary that the affected beneficiary or recipient had knowledge of or participated in the fraud or similar fault." *Id.* at *5.

In other words, "[o]n its face, then, § 405(u) requires the SSA to redetermine benefits based on something less than proof of fraud." *Hicks*, 909 F.3d at 809 (citing *Deutsche Bank Nat. Tr. Co. v. Tucker*, 621 F.3d 460, 463 (6th Cir. 2010)). Indeed, this Court has specifically held that "[t]he reason-to-believe standard is a 'very low bar,' lacking a requirement that 'the Commissioner ... provide evidence specifically tying the fraud to their individual applications.' *Hicks*, 909 F.3d at 820 (Rogers, J., dissenting)." *Ison v. Kijakazi*, No. CV 5:23-054-DCR, 2023 WL 4411026, at *4 (E.D. Ky. July 7, 2023). In fact, the situation in *Ison* also involved one of Conn's clients whose case was connected to his fraudulent scheme and Ison, the client, alleged that the ALJ had improperly excluded the report of one of the doctors who was also involved in this conspiracy, Dr. Huffnagle. *Id.* Ultimately, this Court found that the ALJ's exclusion of Dr. Huffnagle's report was proper given the low bar on the reason-to-believe standard and the similarities in Ison's case with the other cases that were involved in Conn's scheme. *Id.*

Much like in *Ison*, ALJ Walter found that "[g]iven the similarities between Mr. Conn's admitted fraud scheme and the facts of this case, there is reason to believe that fraud or similar fault was involved in the submission of evidence from Dr. Herr." [R. 14 at pg. 618]. ALJ Walter then described the numerous similarities between this matter and the scheme Conn and Dr. Herr perpetuated over the course of multiple cases. As the ALJ explained:

> As described in the OIG affidavit and plea agreements, Mr. Conn admitted to fabricating residual functional capacity forms, medical summary reports, and x-ray reports. Mr. Conn also admitted to paying four medical professionals for their signature on the falsified documents. David P. Herr, D.O., is one of the identified

> co-conspirators of this scheme. Moreover, Mr. Conn also admitted to paying Administrative Law Judge Daugherty to decide that Mr. Conn's clients were disabled (Exhibit 15D; 16D; 17D).
>
> In this case, Mr. Conn represented the beneficiary during the initial application for benefits. Additionally, the record contains an examination by Dr. Herr, with the opinion satisfying SSA's criteria for establishing disability (Exhibit 15F). Furthermore, the beneficiary's original decision awarding benefits was issued by Administrative Law Judge Daugherty on the record, relying entirely on Dr. Herr's report (Exhibit 5A).

[*Id.*]. Plaintiff maintains that the ALJ's conclusion to disregard Dr. Herr's report through this inference is not supported by the law. [R. 21 at pg. 11]. However, the similarities ALJ Walter points out combined with the OIG agent's affidavit and testimony [*see* R. 14 at pgs. 920–23], establishing similarities between this case and the other cases involved in Conn and Herr's scheme indicates that the ALJ's exclusion is proper under the reason-to-believe standard. *See also Ison*, 2023 WL 4411026 at *4 (where this Court found that the ALJ's exclusion of Dr. Huffnagle's report was proper given the similarities between the case and the other cases involved in Conn's fraudulent scheme). As the SSA asserts, "this case has all the hallmarks of the typical Conn/Daugherty fraud scheme" and Maynard has not presented sufficient evidence to indicate that ALJ Walter's finding on this issue was improper. [*See* R. 26 at pg. 8].

As for Maynard's other arguments on this point, they too must fail. As previously indicated, Maynard argues that he was not provided with sufficient opportunity to rebut the exclusion of this report. [R. 21 at pg. 12]. However, the transcript of the hearing demonstrates that ALJ Walter told Maynard that he could "make any arguments as to whether fraud or similar faults was or was not involved in your original application for benefits" and counsel for Maynard noted "an objection to preserve for the record as to the exclusion based on the affidavit not specifically identifying this as a case where fraud was

definitely involved. . ." [R. 14 at pgs. 641, 643]. Therefore, because Maynard had the opportunity to rebut this exclusion, this argument must fail. *See Sexton v. Comm'r of Soc. Sec.*, No. 23-5981, 2024 WL 1994918, at \*4 (6th Cir. May 6, 2024) ("Because she had the chance to rebut the OIG's assertion of fraud and to present evidence supporting her claim, Sexton has not demonstrated that the procedures employed at her hearing violated her due process rights.").

Finally, Maynard has provided no proof that ALJ Walter was not a neutral decision-maker beyond his statement that Dr. Herr's report had, regardless of any fraud issues, little probative value. [R. 21 at pg. 12]. Maynard avers that this statement was improper because "in addition to [Dr. Herr] never having been charged in connection with the Conn scheme, his report is corroborated by the objective medical evidence found in the Plaintiff's MRIs and by the medical opinions of Dr. Rhoads and Dr. Ignatiadis. As such, this report should not have been disregarded, and it should have been given proper weight." [*Id.*]. However, the Sixth Circuit has explained that "the court must start from the presumption that administrative adjudicators are unbiased, and that honesty and integrity exist among them." *Wells v. Apfel*, 234 F.3d 1271 (6th Cir. 2000) (citations omitted). Therefore, the burden to show an ALJ is biased is on the party making that assertion and prove that a conflict of interest or some other specific reason for disqualification exists. *Id.* "Alleged prejudice must be evident from the record and cannot be based on speculation or inference." *Id.* (citing *Schwiker v. McClure*, 456 U.S. 188, 196 (1982)). Here, Maynard has failed to provide any substantive evidence to satisfy that burden or show that this statement from the ALJ demonstrates that a conflict of interest or some other reason for disqualification exists in this matter. Thus, this argument must also fail.

B

Next, Maynard claims that ALJ Walter improperly gave minimal weight to Drs. Ford's and Rhoads' medical opinions "despite the fact that they performed consultative examinations at the behest of the Social Security Administration." [R. 21 at pg. 12]. To begin with, Dr. Ford conducted an examination of Maynard in March of 2010 and made the following findings:

> [Maynard's] ability to understand, remember, and carry out instructions toward performance of simple repetitive tasks is not affected. [Maynard's] ability to tolerate stress and pressure of day-to-day employment is affected by the impairment with moderate limitations noted. [Maynard's] ability to sustain attention and concentration towards performance of simple repetitive tasks is affected by the impairment with marked limitations noted. [Maynard's] capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting is affected by the impairment with moderate limitations noted.

[R. 14 at pg. 488]. ALJ Walter considered this opinion, but ultimately determined that the opinion should be given minimal weight and explained his reasoning with the following:

> The undersigned gives minimal weight to the psychological consultative opinion from Leigh Ann Ford, Ph.D. Dr. Ford examined the beneficiary on March 24, 2010 (Exhibit 9F). The beneficiary complained of chronic depression and anxiety. His pain management provider prescribed Xanax, but the beneficiary was not currently seeking care for these symptoms with a mental specialist. Dr. Ford concluded that the beneficiary demonstrated "moderate" limitation in ability to tolerate stress and pressure of day-to-day employment and respond appropriately to supervision, co-workers, and work pressures in a work setting. Dr. Ford also found "marked" limitation in his ability to sustain attention and concentration towards performance of simple repetitive tasks. The undersigned finds that Dr. Ford's assessment is inconsistent with the lack of mental health treatment during the period at issue, and is overly deferential to the beneficiary's subjective description of symptoms. Additionally, in February 2010, the beneficiary reported he could pay attention for 30 minutes and typically complete tasks that he started, which is inconsistent with marked limitation in sustaining concentration (Exhibit 2E).

[*Id.* at pg. 623].

Pursuant to 20 C.F.R. § 404.1527(c), an ALJ must consider several factors when determining how much weight to give to a medical opinion, including how consistent the opinion is with the overall medical record. In fact, further regulations indicate that consistency with the

medical record is a vital factor to consider when analyzing a medical opinion and its authority in each case. *See* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be."); 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). Further, as both parties acknowledge, Dr. Ford and Dr. Rhoads' opinions are not given controlling weight because they are not Maynard's treating providers. [*See* R. 21 at pg. 12; R. 26 at pg. 12]. Indeed, this Court has held in the past that "[i]t is well established that the opinions of consultative examiners are not entitled to controlling weight." *Caldwell v. Astrue*, No. CIV. A. 08-350-HRW, 2009 WL 3756992, at *3 (E.D. Ky. Nov. 9, 2009) (citations omitted); *see also Crider v. Colvin*, No. CIV.A. 13-13-HRW, 2014 WL 2155261, at *4 (E.D. Ky. May 22, 2014) (consultative examiner's opinion is not accorded any special weight or deference). While the ALJ must provide good reasons when explaining the weight that has been given to treating providers' opinions, such a requirement is not needed when discussing an examining but non-treating opinion. See 20 C.F.R. § 404.1527(c)(2); *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Finally, as previously indicated, the ALJ's decision to discount and reject these opinions will be upheld if substantial evidence exists to support that finding. *See* 42 U.S.C. § 405(g).

Here, Dr. Ford's examination was properly discounted. Dr. Ford's report indicated Maynard was suffering from several mental impairments, including the fact he could not spell the word "world" backwards, he could not recite three or four digits backwards, and his "[c]apacity

for abstraction appears to be limited to the concrete interpretation of language as the claimant could not explain simple proverbs." [R. 14 at pgs. 487–88]. Dr. Ford thus found that Maynard was suffering from moderate limitations that affected his ability to respond to the stress and pressure of day-to-day employment and to respond appropriately to co-workers and others in the workplace. [*Id.* at pg. 488]. However, this finding is not supported by the rest of the record. Indeed, as the ALJ points out, "in February 2010, the beneficiary reported he could pay attention for 30 minutes and typically complete tasks that he started, which is inconsistent with marked limitation in sustaining concentration." [*Id.* at pg. 623]. Maynard's own statements in his medical record therefore contradict Dr. Ford's findings. Further, as the parties acknowledge, the only medical record from the relevant period indicated Maynard's mental state was normal and the only record of mental health treatment was a prescription for Xanax. [*See* R. 21 at pg. 13; R. 26 at pg. 14; *see also* R. 14 at pgs. 481, 487].

Maynard's medical record therefore contradicts Dr. Ford's findings on his mental status and the fact Maynard was prescribed Xanax cannot save his argument. Rather, as the ALJ determined, it appears that Dr. Ford's assessment is "overly deferential to the beneficiary's subjective description of symptoms." [R. 14 at pg. 623]. Plaintiff maintains that Dr. Ford's findings were not based solely on his subjective descriptions, but beyond Dr. Ford's own findings Maynard has failed to provide any other support to justify Dr. Ford's findings. [*See* R. 21 at pg. 13]. As the Sixth Circuit has explained in the past, a medical opinion may be properly discounted when it is determined that the opinion relies too heavily on the claimant's subjective complaints. *See Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017). Maynard has failed to present evidence to rebut the ALJ's finding that Dr. Ford's opinion was contradicted by the record

and relied too heavily on his subjective complaints, therefore ALJ Walter's decision to discount this opinion was supported by substantial evidence.

As for Dr. Rhoads, she determined from her examination the following:

The claimant's ability to perform work-related activities, such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling, and pushing and pulling heavy objects, is impaired due to fair to poorly controlled hypertension, chronic low back pain with lumbar disc disease and a history of radiculopathy, a subacute left shoulder injury, loss of range of motion of the left elbow and forearm, poorly controlled hypertension, occasional numbness in the right middle and index fingers, chronic bronchitis, dyspnea on exertion, atypical chest wall pain, and an abnormal electrocardiogram by history.

[R. 14 at pgs. 498–99]. The ALJ, however, made the following findings as to Dr. Rhoads' opinion:

The undersigned gives minimal weight to the opinion that Susan Rhoads, M.D. provided after examining the beneficiary in May 2010. Dr. Rhoads opined that the beneficiary's "ability to perform work-related activities, such as, bending, stooping, lifting, walking, crawling, squatting, carrying and traveling, pushing and pulling heavy objects, is impaired" due to hypertension, back pain, and a left shoulder injury. Dr. Rhoads' observations and examination findings are informative, but the opinion that the beneficiary is "impaired" in various physical functions is vague and non-specific as to the beneficiary's work-related capabilities. The undersigned has accommodated the beneficiary's shoulder pain and back pain above with a limited range of light work with postural, reaching, and environmental limitations.

[*Id.* at pg. 626]. Maynard contends that ALJ Walter's decision to give minimal weight to this opinion was improper because the 2010 Disability Determination Explanation gave great weight to it and because Dr. Rhoads' opinion is otherwise supported by the record and her findings sufficiently describe Maynard's impairments. [R. 21 at pg. 13].

However, this argument must also fail. First, as the SSA explains, "[w]hile Dr. Rhoads explained that plaintiff had physical limitations, she didn't clarify the extent of those limitations." [R. 26 at pg. 12]. As the Sixth Circuit has held in the past, the ALJ is within his rights to afford little weight to an opinion that was vague. *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018). Further, Maynard has failed to demonstrate that affording this opinion

more weight would have ultimately changed his RFC calculation. After considering the records and opinions in this matter, ALJ Walter determined that Maynard had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except he could occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. He could never climb ladders, ropes, or scaffolds. He could occasionally reach overhead with the left upper extremity. He could not tolerate concentrated exposure to vibration or to hazards." [R. 14 at pg. 624]. Maynard fails to provide any evidence or citations to the record to indicate that the RFC calculation would have changed even if Dr. Rhoads' opinion had been given greater weight. *See Watters v. Comm'r of Soc. Sec. Admin.,* 530 F. App'x 419, 423 (6th Cir. 2013) (holding that failure to properly accord weight to a medical report is harmless error if the ALJ makes findings otherwise consistent with the medical opinion). Finally, the fact the June 2010 Disability Determination Explanation relied heavily on Dr. Rhoads' opinion was not binding on ALJ Walter when he rendered his decision. *See* 20 C.F.R. § 404.921 (holding that a reconsideration determination is not binding if the claimant appeals the decision to an ALJ). Therefore, ALJ Walter was not required to also rely as heavily on Dr. Rhoads' opinion when he made his determination. Because the ALJ's decision to accord little weight to Dr. Rhoads' opinion is supported by substantial evidence and Maynard has otherwise failed to demonstrate that the ultimate RFC calculation would have changed if more weight had been given to the opinion, this argument must also fail.

CONCLUSION

Tommy Lee Maynard appealed the Acting Commissioner's final decision that he is not entitled to disability insurance benefits. Maynard argues that the ALJ's determination that Dr. Herr's report was tainted by fraud and his decision to give little weight to the opinions of Drs. Ford and Rhoads necessitate a reversal of the ALJ's decision. But the record indicates that there is

substantial evidence to support the ALJ's findings on Dr. Herr's report and his consideration of Drs. Ford's and Rhoads' medical opinions. Plaintiff has failed to satisfy his burden of proof to warrant a reversal of ALJ Walter's decision. The Commissioner's final decision is therefore AFFIRMED. A separate judgment will follow.

Signed September 26, 2024.



Signed By:
*Edward B. Atkins*
United States Magistrate Judge